CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
March 14, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TAYBRONNE-ALTEREIK WHITE,<br>　　Plaintiff, | )<br>)<br>) Civil Action No. 7:23-cv-00536<br>) |
| v. | )<br>) By: Elizabeth K. Dillon |
| LT. ALLEN, *et al.*,<br>　　Defendants. | ) Chief United States District Judge<br>)<br>) |

**MEMORANDUM OPINION**

Taybronne-Altereik White, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983. Five of the six defendants filed a partial motion to dismiss (Dkt. No. 55), and White responded (Dkt. No. 62). Defendants' partial motion to dismiss will be granted in part and denied in part.

I. BACKGROUND

**A. Procedural History**

White's allegations are based upon claims of excessive force that occurred while he was incarcerated at Red Onion State Prison. His original claims were brought against Lt. Allen, Sgt. Mullins, Sgt. Branham, and John Doe Officers Involved. (Dkt. No. 1.) He later filed an amended complaint against the same defendants. (Am. Compl., Dkt. No. 30.) Then, he identified the John Doe defendants as Officers Cochran, Holland, and D. Mullins, who were added as defendants to the amended complaint. (Dkt. No. 42.)

After service, Officer Branham filed an answer, and he is the lone defendant who has not joined the motion to dismiss. (Dkt. No. 45.) Lt. Allen and Sgt. Mullins filed a partial answer. (Dkt. No. 54.) Finally, the five defendants aside from Officer Branham filed a partial motion to dismiss, which is currently pending. Defendants construe the amended complaint as alleging

two claims – claim one being an Eighth Amendment claim to be free from use of excessive force, and claim two alleging a due process violation by not turning on body cameras and by obstructing the pod camera. (Dkt. No. 56.) Defendants,ask the court to dismiss the first claim against Officers Cochran, Holland, and D. Mullins claim two against Cochran, Holland, D. Mullins, Sgt. Mullins, and Lt. Allen, and all monetary damage claims against them in their official capacities. (Dkt. No. 55.)

## B. Plaintiff's Allegations

White asserts that on November 23, 2022, at approximately 7:00 p.m., in A Building, Pod-5, Cell 8, plaintiff had an altercation with a corrections officer named Rose. White threatened to write numerous complaints against Officer Rose for refusing to pull in-pod recreation. (Am. Compl. ¶ 1.) Officer Rose told White that because of his complaints, Rose was going to write plaintiff up for threatening to kill him even though plaintiff never made such threats. White flashed complaint forms through the cell door during this exchange. (*Id.* ¶ 2.)

Five minutes later, White was asked to step out of his cell. On the way to the sallyport, he was met by Sergeants Allen, Mullins, and Branham, along with Officers Rose, Cochran, Holland, and Mullins. (*Id.* ¶ 3.) Sergeant Branham stated "get your black ass against the wall boy." (*Id.* ¶ 4.) White complied and was placed in handcuffs. While White was against the wall, Officer Rose came to his side and screamed that White was creating a serious situation with his threats of filing complaints. Defendants discussed how they were going to "get" White. They escorted him to segregation in pod B-3 and discussed how they would return that night to beat him. (*Id.*)

While White was in segregation, other inmates told him that defendants beat another inmate and they would likely return in the middle of the night to beat him. (*Id.* ¶ 5.) The

inmates suggested that White go on suicide watch so he could be placed in a cell with a camera. (*Id.*) White told the floor officer that he was unsure about his safety and asked to be placed on suicide watch, and the floor officer responded that he would inform the proper authorities. (*Id.* ¶ 6.) Approximately one to two hours later, defendants returned and Sgt. Allen asked White to "cuff up" so he could be moved to the suicide watch cell. White complied. (*Id.* ¶ 7.)

After being handcuffed, White was escorted down the stairs and told to stand in front of Cell 1 while defendants cleaned it. Sgt. Mullins asked "John Doe officers" [now identified as Officers Cochran, Holland, and D. Mullins] to stand blocking the pod camera. Sgt. Mullins was holding White by the right arm, and Sgt. Allen had him by his left arm. (*Id.* ¶ 8.) Sgt. Mullins shook White's right arm twice, but White did not respond. Another unidentified officer exited the cell and stood obstructing the camera. (*Id.* ¶ 9.) Sgt. Mullins whispered something to the officers. Sgt. Mullins then hit White with an open palm on the back of his neck, causing him to stumble to the left. Sgt. Allen violently slung White by his right arm at the same time, causing White to move in two different directions simultaneously. White felt pain and fell to the floor. (*Id.* ¶ 10.) While an unidentified defendant lay on top of White, other defendants joined. They used racial slurs before Sgt. Branham directed defendants to "tone it down" because someone was approaching with a hand-held video camera. (*Id.* ¶ 11.)

Lieutenant Massongill, who is not a defendant, arrived and walked over to White, removed White's glasses, and placed a spit mask on him. Lt. Massongill attempted to lift White to his feet but he cried out in pain because he believed his back was broken. Medical Administrator Jessie responded and determined that White needed to be taken to medical. On the way to medical, Lt. Massongill falsely accused White of resisting and disobeying a direct

3

order. Lt. Massongill had his body camera activated, but he left once White arrived in medical. (*Id.* ¶ 12.)

When White arrived in medical, he heard an unidentified defendant instruct the other defendants to move him out of the view of the cameras. Defendants rolled White's stretcher behind a curtain. After the nurse examined White, she determined that he needed to be transported to the hospital. Unnamed defendants bent White's toes while Sgts. Allen and Branham bent his fingers and hands backwards. An unnamed male nurse told defendants "hurt his ass but don't break anything." White complained that he could not feel his fingers and toes. (*Id.* ¶ 13.)

Sgt. Branham handcuffed White and placed a lockbox on him. Defendants then moved White in a way that put pressure on his wrist, causing him pain. White complained that he thought his wrist was broken, as he had previously fractured his wrist. (*Id.* ¶ 14.) At the hospital, testing revealed that neither White's back nor wrist were broken. (*Id.* ¶ 15.) His back was sprained in two places, and he was given muscle relaxers. (*Id.* ¶ 16.)

Since November 24, 2022, White has been receiving treatment for his ongoing back problems from the November incident and from being shot in his back twice in 2006. (*Id.* ¶ 17.)

White received disciplinary charges for disobeying an order and falsifying a medical emergency. He was found guilty of both charges despite the lack of body camera footage. (*Id.* ¶ 18.) Warden Rick White later overturned White's disciplinary convictions and returned the funds that had been imposed as punishment. (*Id.* ¶ 19.)[1]

White asserts a claim for excessive force in violation of the Eighth Amendment. (Am. Compl. p. 13.) He also alleges that defendants violated his due process rights by not turning on

---

[1] *See* Dkt. No. 30-2 at 8 of 45 (dismissing charge and reimbursing $15.00 fine).

4

their body cameras and by obstructing the pod camera. (*Id.*) He seeks a transfer out of the Western region of Virginia, $50,000 in compensatory damages, $50,000 in punitive damages, and $1,000 in nominal damages plus costs. (*Id.* p. 14.)

## II.  ANALYSIS

**A.  Motion to Dismiss**

When analyzing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must view all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. A plaintiff must "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

In addition, *pro se* plaintiffs are held to a "less stringent standard" than lawyers, and courts construe their pleadings liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, a *pro se* complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*. *See Manigault v. Capital One, N.A.*, Civil No. JKB-23-223, 2023 WL 3932319, at *2 (D. Md. June 8, 2023). *Pro se* complaints "represent the work

of an untutored hand requiring special judicial solicitude," but even so, district courts are not required to "conjure up questions never squarely presented to them" or to "construct full blown claims from . . . fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

While the court must ordinarily confine itself to an examination of the complaint, the court may consider documents attached to the pleadings, such as the documents provided by plaintiff that are related to the disciplinary proceedings against him. *See Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (courts are limited to considering the "sufficiency of the allegations set forth in the complaint and the documents attached or incorporated into the complaint").

**B. Official Capacity Claims**

As an initial matter, the moving defendants argue that White's request for monetary damages against them in their official capacities must be dismissed. The court agrees and will dismiss those claims because defendants are immune from monetary damages to the extent that they were acting in their official capacities. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Dale v. FNU Barnes*, 1:23CV373, 2024 WL 4416440, at *3 (M.D.N.C. Oct. 4, 2024) ("It follows that just as 'the Eleventh Amendment bars a damages claim against a state in federal court,' it also bars suit against state officials in their official capacity.") (quoting *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).

**C. Excessive Force Claims Against Cochran, Holland, and D. Mullins**

To state a claim against a defendant for violation of his constitutional rights pursuant to § 1983, a plaintiff must show a defendant's personal involvement in the alleged violation. *See*

6

*Williamson v. Stirling*, 912 F.3d 154, 171–71 (4th Cir. 2018) (noting that a plaintiff must affirmatively show that the official acted personally in violating plaintiff's constitutional rights). Defendants argue that White has made no specific allegations that Cochran, Holland, or D. Mullins were involved in the alleged use of excessive force against him.  However, White alleges that Sgt. Mullins "asked John Doe Officers . . . [to] 'stand behind us so the pod camera can't see,' in which said officers complied with Sgt. Mullins orders while Sgt. Mullins held claimant by the right arm and Sgt. Allen held claimant by the left arm."  (Am. Compl. 8.)  Cochran, Holland, and D. Mullins were later substituted in this action for the John Doe Officers.  Thus, White has plausibly alleged a claim for excessive force as well as the personal involvement of Cochran, Holland, and D. Mullins, who have notice of the claims against them by virtue of being substituted for the John Doe Officers.  The court will therefore deny defendants' motion to the extent that it seeks to dismiss White's excessive force claims against Cochran, Holland, and D. Mullins.

**D.  Body Camera Activation**

White attempts to state a due process claim based on "Virginia statute and operating procedure which requires Sgts., to have their body cams turned on during altercations with inmates."  (Am. Compl. at 14.)  "A state's failure to adhere to its own procedures and regulations is not a federal due process issue nor is it actionable under § 1983."  *Chavez v. Bailey*, Civil Action No. 7:19cv00014, 2020 WL 2751899, at *7 (W.D. Va. May 27, 2020) (citing *Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990)).  Moreover, to the extent that White may be arguing that the lack of body cam footage denied him due process because he was unable to use the footage in his disciplinary hearing, a *de minimis* fine of $15.00 does not implicate due process, and even if it did, White was reimbursed for the fine and his discipline was overturned.

7

*See Bowling v. Clarke*, CASE NO. 7:19CV00453, 2021 WL 440794, at *5 (W.D. Va. Feb. 8, 2021) (finding that a "small, monetary fine (such as $15) [does not] trigger[] federal due process protections during prison disciplinary proceedings"); *Allen v. Mayo*, 1:20cv780 (TSE/JFA), 2021 WL 1753948, at *6 n.8 (E.D. Va. May 4, 2021) (explaining that there is "no violation of due process where a disciplinary conviction is overturned in the administrative process") (citing *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995)). Therefore, the court will dismiss White's due process claim against the moving defendants.

### III.  CONCLUSION

For the reasons set forth herein, the motion to dismiss will be granted in part and denied in part. The court will enter an appropriate order.

Entered: March 14, 2025.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge

8