CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 23, 2026

LAURA A. AUSTIN, CLERK
BY:  s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TAYBRONNE-ALTEREIK WHITE, | ) | |
| Plaintiff, | ) | Civil Action No. 7:23-cv-00536 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| LT. ALLEN, *et al.*, | ) | Chief United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Taybronne-Altereik White, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 against six defendants, all officers at Red Onion State Prison.  White alleges claims for excessive force in violation of the Eighth Amendment and a due process claim premised upon defendants not activating their body cameras.  Five of the six defendants filed a partial motion to dismiss which was granted in part and denied in part.  (Dkt. Nos. 65, 66.)  The court dismissed White's claims for monetary damages against defendants in their official capacities and dismissed the due process claims but denied the motion to dismiss the excessive force claims.  The only defendant that did not join in that motion was Doug Branham.

Now before the court is Branham's motion for judgment on the pleadings.  (Dkt. No. 71.) Branham seeks dismissal of the due process claim under the same rationale that the court relied upon to dismiss that claim against the other five defendants.  Branham also argues that White has not stated an actionable excessive force claim against him.  (*See* Dkt. No. 72.)  White filed a response to this motion (Dkt. No. 76), Branham filed a reply brief (Dkt. No. 80), and White filed a sur-reply brief (Dkt. No. 81).[1]

---

[1]  White's sur-reply is not authorized by the local rules, and White did not seek leave to file it, but the court will consider the brief.

White has also filed a motion for a preliminary injunction.  (Dkt. No. 82.)  In this motion, White contends that a prison official who is not a party to this lawsuit has interfered with his prison trust account statement.  Finally, White has moved for appointment of counsel.  (Dkt. No. 89.)

For the reasons stated below, Branham's motion for judgment on the pleadings will be granted with respect to the due process claim but denied in all other respects.  White's motion for a preliminary injunction will be denied, and his motion for appointment of counsel will also be denied.

## I.  BACKGROUND

### A.  Procedural History

White initially brought claims against Lt. Allen, Sgt. Mullins, Sgt. Branham, and John Doe Officers Involved.  (Dkt. No. 1.)  He later filed an amended complaint against the same defendants.  (Am. Compl., Dkt. No. 30.)  Then, he identified the John Doe defendants as Officers Cochran, Holland, and D. Mullins, who were added as defendants to the amended complaint.  (Dkt. No. 42.)  Lt. Allen and Sgt. Mullins filed a partial answer (Dkt. No. 54) and joined Cochran, Holland, and D. Mullins in filing a partial motion to dismiss.  (Dkt. No. 55.)  Branham filed an answer (Dkt. No. 45) and then a motion for judgment on the pleadings which is now before the court.

In addressing the partial motion to dismiss, the court construed the amended complaint as alleging two claims—an Eighth Amendment claim to be free from the use of excessive force and a due process violation for not turning on body cameras and for obstructing the pod camera.  (Dkt. No. 65 at 2.)  The court dismissed White's claims for damages against Lt. Allen, Sgt. Mullins, Officer Cochran, Officer Holland, and Officer D. Mullins insofar as they were sued in

their official capacities.  The court also dismissed the due process claim against these five

defendants.  (Dkt. No. 66.)  The court reasoned that a state's failure to adhere to its own

procedures and regulations is not a federal due process issue actionable under § 1983.  (Dkt. No.

65 at 7.)  Also, "to the extent that White may be arguing that the lack of body cam footage

denied him due process because he was unable to use the footage in his disciplinary hearing, a *de*

*minimis* find of $15.00 does not implicate due process, and even if it did, White was reimbursed

for the fine and his discipline was overturned."  (*Id.*)

Of the five defendants, only Cochran, Holland, and D. Mullins moved to dismiss the

excessive force claim against them, and the court denied this aspect of the motion.  (Dkt. No. 65

at 6.)  Lt. Allen and Sgt. Mullins did not move to dismiss the excessive force claim.  Thus, the

remaining claims as to Cochran, Holland, D. Mullins, Lt. Allen, and Sgt. Mullins are White's

claims for excessive force against them in their individual capacities.

Branham now moves for dismissal of the due process and excessive force claims against

him.

### B.  Plaintiff's Allegations

The events giving rise to White's lawsuit occurred at Red Onion State Prison.  Plaintiff

has since been transferred to Wallens Ridge State Prison.  (*See* Am. Compl. (Description of

Plaintiff).)

White asserts that on November 23, 2022, at approximately 7:00 p.m., in A Building,

Pod-5, Cell 8, plaintiff had an altercation with a corrections officer named Rose.  White

threatened to write numerous complaints against Officer Rose for refusing to pull in-pod

recreation.  (Am. Compl. ¶ 1.)  Officer Rose told White that because of his complaints, Rose was

3

going to write plaintiff up for threatening to kill him even though plaintiff never made such threats. White flashed complaint forms through the cell door during this exchange. (*Id.* ¶ 2.)

Five minutes later, White was asked to step out of his cell. On the way to the sallyport, he was met by Sergeants Allen, Mullins, and Branham, along with Officers Rose, Cochran, Holland, and Mullins. (*Id.* ¶ 3.) Sergeant Branham stated, "get your black ass against the wall boy." (*Id.* ¶ 4.) White complied and was placed in handcuffs. While White was against the wall, Officer Rose came to his side and screamed that White was creating a serious situation with his threats of filing complaints. Defendants discussed how they were going to "get" White. They escorted him to segregation in pod B-3 and discussed how they would return that night to beat him. (*Id.*)

While White was in segregation, other inmates told him that defendants beat another inmate and they would likely return in the middle of the night to beat him. (*Id.* ¶ 5.) The inmates suggested that White go on suicide watch so he could be placed in a cell with a camera. (*Id.*) White told the floor officer that he was unsure about his safety and asked to be placed on suicide watch, and the floor officer responded that he would inform the proper authorities. (*Id.* ¶ 6.) Approximately one to two hours later, defendants returned, and Sgt. Allen asked White to "cuff up" so he could be moved to the suicide watch cell. White complied. (*Id.* ¶ 7.)

After being handcuffed, White was escorted down the stairs and told to stand in front of Cell 1 while defendants cleaned it. Sgt. Mullins asked "John Doe officers" (now identified as Officers Cochran, Holland, and D. Mullins) to stand blocking the pod camera. Sgt. Mullins was holding White by the right arm, and Sgt. Allen had him by his left arm. (*Id.* ¶ 8.) Sgt. Mullins shook White's right arm twice, but White did not respond. Another unidentified officer exited the cell and stood obstructing the camera. (*Id.* ¶ 9.) Sgt. Mullins whispered something to the

4

officers.  Sgt. Mullins then hit White with an open palm on the back of his neck, causing him to stumble to the left.  Sgt. Allen violently slung White by his right arm at the same time, causing White to move in two different directions simultaneously.  White felt pain and fell to the floor.  (*Id.* ¶ 10.)  While an unidentified defendant lay on top of White, other defendants joined.  They used racial slurs before Sgt. Branham directed defendants to "tone it down" because someone was approaching with a hand-held video camera.  (*Id.* ¶ 11.)

Lieutenant Massongill, who is not a defendant, arrived and walked over to White, removed White's glasses, and placed a spit mask on him.  Lt. Massongill attempted to lift White to his feet, but he cried out in pain because he believed his back was broken.  Medical Administrator Jessie responded and determined that White needed to be taken to medical.  On the way to medical, Lt. Massongill falsely accused White of resisting and disobeying a direct order.  Lt. Massongill had his body camera activated, but he left once White arrived in medical.  (*Id.* ¶ 12.)

When White arrived in medical, he heard an unidentified defendant instruct the other defendants to move him out of the view of the cameras.  Defendants rolled White's stretcher behind a curtain.  After the nurse examined White, she determined that he needed to be transported to the hospital.  Unnamed defendants bent White's toes while Sgts. Allen and Branham bent his fingers and hands backwards.  An unnamed male nurse told defendants, "hurt his ass but don't break anything."  White complained that he could not feel his fingers and toes.  (*Id.* ¶ 13.)

Sgt. Branham handcuffed White and placed a lockbox on him.  Defendants then moved White in a way that put pressure on his wrist, causing him pain.  White complained that he thought his wrist was broken, as he had previously fractured his wrist.  (*Id.* ¶ 14.)  At the

5

hospital, testing revealed that neither White's back nor wrist were broken.  (*Id.* ¶ 15.)  His back was sprained in two places, and he was given muscle relaxers.  (*Id.* ¶ 16.)

Since November 24, 2022, White has been receiving treatment for his ongoing back problems from the November incident and from being shot in his back twice in 2006.  (*Id.* ¶ 17.)

White received disciplinary charges for disobeying an order and falsifying a medical emergency.  He was found guilty of both charges despite the lack of body camera footage.  (*Id.* ¶ 18.)  Warden Rick White later overturned White's disciplinary convictions and returned the funds that had been imposed as punishment.  (*Id.* ¶ 19.)[2]

White asserts a claim for excessive force in violation of the Eighth Amendment.  (Am. Compl. Legal Claims, ¶ 2.)  He also alleges that defendants violated his due process rights by not turning on their body cameras and by obstructing the pod camera.  (*Id.*)  He seeks a transfer out of the western region of Virginia, $50,000 in compensatory damages, $50,000 in punitive damages, and $1,000 in nominal damages plus costs.  (*Id.* Prayer for Relief ¶¶ 3, 4.)

## C.  Branham's Motion for Judgment on the Pleadings

Branham argues that the due process claim should be dismissed for the reasons stated in the court's order addressing the partial motion to dismiss by the other defendants.  He also argues that the excessive force claim should be dismissed against him because White's excessive force claim is limited to a back injury, and Branham did not participate in any use of force that hurt White's back.  (Dkt. No. 72.)

## D.  White's Response, Branham's Reply, and White's Sur-Reply

In response to the motion to dismiss, White asserts that the defendants conspired to place him in a segregation cell and "come back [later] that night to give Plaintiff a good old ass

---

[2]  *See* Dkt. No. 30-2 at 8 of 45 (dismissing charge and reimbursing $15.00 fine).

whipping." (Dkt. No. 76 at 5.) White attaches declarations from three fellow inmates who describe hearing the attack on White and officers using racial slurs. (Dkt. No. 76-1.) Branham objects to White's arguments as an impermissible attempt to amend his complaint through briefing. (Dkt. No. 80.) Plaintiff maintains he was not trying to amend his complaint, and he "relies on all of the statements outlined in his amended complaint period." (Dkt. No. 81 at 2.)

### E. White's Motion for a Preliminary Injunction and Immediate Restraining Order

In this motion, White claims that Unit Manager Santos has interfered with the filing of his prison trust fund account statement in another lawsuit. (Dkt. No. 82.) Defendants Lt. Allen, Sgt. Mullins, Officer Cochran, Officer Holland, and Officer D. Mullins filed a response in opposition to this motion. (Dkt. No. 83.)

## II. ANALYSIS

### A. Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). Therefore, under Rule 12(c), a claim must be dismissed when a claimant's allegations fail to set forth a set of facts which, if true, would entitle the claimant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In reviewing a motion for judgment on the pleadings, a court should "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019).

Additionally, "[f]ederal courts are obliged to liberally construe filings by pro se litigants." *United States v. Brown*, 797 F. App'x 85, 89 (4th Cir. 2019) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  However, even a *pro se* litigant's complaint should be dismissed when it "appears beyond doubt that the litigant can prove no set of facts in support of his claim that would entitle him to relief."  *Barefoot v. Polk*, 242 F. App'x 82, 83 (4th Cir. 2007).

## C.  Excessive Force Claim Against Branham

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" by a prison official.  *Hill v. Crum*, 727 F.3d 312, 317 (4th Cir. 2013).  To prove an excessive force claim, a plaintiff must show: (1) that the prison official's use of force was objectively harmful such that it violates contemporary standards of decency; and (2) that the prison official's use of force was not "applied in a good-faith effort to maintain or restore discipline," but was intended to "maliciously and sadistically . . . cause harm."  *Hudson v. McMilliam*, 503 U.S. 1, 7 (1992).  Liability can also attach to a bystander observing excessive force or a supervisor condoning it.

White has alleged that the use of force "caused plaintiff to suffer pain from physical back injury (two different back sprains)."  (Am. Compl. Legal Claims ¶ 3.)  Based on this allegation, Branham argues that he was not involved in a constitutional violation because White does not allege that Branham did anything to White's back.  *See Williamson v. Stirling*, 912 F.3d 154, 171–71 (4th Cir. 2018) (noting that a plaintiff must affirmatively show that the official acted personally in violating plaintiff's constitutional rights).  However, the court observes that Branham ignores many of the allegations.  White places Branham at the scene of the threats to get White and beat him (*id.* ¶ 4), and White alleges that Branham told the defendants who were beating White to "tone it down" because someone was coming with a camera (*id.* ¶ 11).  White further alleges that Branham harmed him, for example, by bending his fingers and his hands

backwards.  Liberally construing White's complaint, this is sufficient to allege personal

involvement by Branham in an excessive force claim.  Branham does not argue that White's

allegations that Branham harmed him fall short of the above-stated standard for an excessive

force claim.

The court will deny Branham's motion for judgment on the excessive force claim.

**D.  Due Process Claim**

White attempts to state a due process claim based on "Virginia statute and operating

procedure which requires Sgts., to have their body cams turned on during altercations with

inmates."  (Am. Compl. Prayer for Relief ¶ 1.)  This claim will be dismissed against Branham for

the reasons stated in the court's opinion addressing the motion to dismiss filed by the other five

defendants.  The court adopts the reasoning in that opinion with respect to the due process claim

by reference.  (Dkt. No. 65 at 7–8.)

**E.  Motion for Injunctive Relief**

A plaintiff seeking a preliminary injunction must establish all four of the following

elements: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable

harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4)

that an injunction is in the public interest.  *Winter v. Natural Res. Defense Council, Inc.*, 555

U.S. 7, 20 (2008).  In the context of the administration of a state prison, injunctive relief should

be granted only in compelling circumstances.  *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir.

1994).  The judiciary grants "wide ranging deference" to prison administrators on matters within

their discretion.  *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).

White's contentions in his request for injunctive relief pertain to the processing of his

prisoner trust account statement.  These arguments are not related to the allegations in this

9

lawsuit, particularly because they are directed against Unit Manager Santos, who is not a party to this lawsuit.  While a "preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," an injunction should not issue when "it deals with a matter lying wholly outside the issues in the suit." *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 220 (1945); *see also Brooks v. Zorn*, No. 2:22-cv-00739-DCN-MHC, 2024 WL 1571688, at *6 (D.S.C. Apr. 11, 2024) (denying motion that "seeks injunctive relief unrelated to his complaint against non-parties to this lawsuit") (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)).

For these reasons, the court will deny White's request for injunctive relief.

## F.  Motion to Appoint Counsel

Finally, White moves for appointment of counsel.  While there is no constitutional right to appointed counsel in a civil case, the court may exercise its discretion to appoint counsel for an indigent party in a civil action, 28 U.S.C. § 1915(d); *see Smith v. Blackledge*, 451 F.2d 1201, 1203 (4th Cir. 1971).  The Fourth Circuit has stated that counsel should be appointed only in exceptional circumstances, which "will turn on the quality of two basic factors—the type and complexity of the case, and the abilities of the individuals bringing it." *Brock v. City of Richmond*, 983 F.2d 1055 (4th Cir. 1993).  The court must therefore assess (1) whether the plaintiff asserts a claim that is not frivolous, (2) the difficulty of the claim, and (3) whether the plaintiff can present the claim considering the skill required to do so and the plaintiff's individual abilities.  *Jenkins v. Woodard*, 109 F.4th 242, 248 (4th Cir. 2024).

The court considers White's excessive force claim to be plausible at this stage of the proceedings, but not complicated or overly complex.  "In most civil rights cases, the issues are not complex," *Cummings v Lyons*, No. 1:22-cv-3638-DCC-SVH, 2023 WL 4905962, at *1

(D.S.C. July 31, 2023), and moreover, plaintiff's "inexperience and incarceration alone do not warrant appointment of counsel," *Jenkins*, 109 F.4th at 244.  Plaintiff has thus far demonstrated his ability to present his claims to the court.

Accordingly, the court will deny plaintiff's motion for appointment of counsel at this time.

### III.  CONCLUSION

For the reasons set forth herein, Branham's motion for judgment on the pleadings will be granted in part and denied in part, plaintiff's motion for a preliminary injunction will be denied, and plaintiff's motion for appointment of counsel will also be denied.  The court will enter an appropriate order.

Entered: March 23, 2026.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge